Jean SCHMITZ; Leonard Schmitz, Petitioners–Appellants,

v.

Carlos J. ZILVETI, III; Nicholas S. Meris; Prudential–Bache Securities Inc., aka Prudential Securities, Inc., Respondents–Appellees.

No. 92–16853.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1993.

Decided April 5, 1994.

Cedric Choi, Honolulu, HI, for petitioners-appellants.

Terry Ross and Dawn M. Schock, Keesal, Young & Logan, Long Beach, CA, for respondents-appellees.

Before: POOLE, WIGGINS, and T.G. NELSON, Circuit Judges.

## OPINION

WIGGINS, Circuit Judge:

### FACTS AND PRIOR PROCEEDINGS

Pursuant to a contract, Jean and Leonard Schmitz ("Appellants") and Zilveti, Meris, and Prudential–Bache Securities, Inc. ("Pru–Bache") (collectively "Appellees") submitted a dispute to arbitration before the National Association of Securities Dealers ("NASD"). Under the submission agreements, the dispute was to be arbitrated in accordance with the NASD's *A Code of Arbitration Procedure* (1990) ("NASD Code"). Three arbitrators were chosen: John R. Conrad, Carolyn J. Yamasaki, and Richard G. MacMillan. Conrad, a lawyer, was chosen as chairperson of the arbitration panel.

The NASD Code requires each arbitrator to "disclose to the Director of Arbitration any circumstances which might preclude such arbitrator from rendering an objective and impartial determination." NASD Code § 23(a). Specifically, an arbitrator must disclose (1) "[a]ny direct or indirect financial or personal interest in the outcome"; (2) "any . . . financial, business, professional, family, or social relationships that are likely to affect impartiality or might reasonably create an appearance of partiality or bias"; and (3) any personal relationships with any party, its counsel, or witnesses. *Id.* These relationships must be disclosed whether maintained, presently or previously, by the arbitrators or "members of their families or their current employers, partners, or business associates." *Id.* The NASD Code also requires arbitrators to make an investigation regarding potential conflicts of interest. NASD Code section 23(b) provides: "Persons who are requested to accept appointment as arbitrators should make a reasonable effort to inform themselves of any interests or relationships described in Paragraph (a) above."

Each arbitrator in this case completed a disclosure form indicating affiliations, if any, with the parties to the arbitration and any other matter he or she believed was required to be disclosed. The parties were given these forms. Neither side objected to any of the three arbitrators. After a hearing, the three arbitrators found unanimously in favor of Appellees. A post-award investigation by Appellants then revealed the following facts: Conrad's law firm represented the parent company of Pru–Bache, Prudential Insurance Co., in at least nineteen cases during a period of 35 years; the most recent representation ended approximately 21 months before this arbitration was submitted. Conrad had reviewed, prior to the hearing, documents stating that Prudential Insurance Co. was the parent company of Pru–Bache. Yet Conrad only ran a conflict check for Pru–Bache. He disclosed prior to the hearing none of the many Prudential Insurance Co. cases his law firm had handled.[1]

Appellants challenged the arbitration award in district court. They alleged that the award should be vacated because Conrad was evidently partial under 9 U.S.C. § 10(a)(2).[2] The district court held that a party challenging an arbitration award must prove facts establishing a reasonable impression of evident partiality and that arbitrators are only bound to disclose facts of which they are aware at the time of the hearing. The court then found that because Conrad was unaware of his law firm's conflict at the time of the hearing, Appellants had failed to show facts meeting their burden of proof. On this basis, the district court found that no evident

---

1. Appellants also discovered various facts concerning a relationship between Yamasaki and MacMillan which existed prior to the arbitration. In view of our disposition, however, we express no opinion on whether these facts or the failure to disclose them created evident partiality or caused Yamasaki and MacMillan to exceed their authority.

2. Section 10(a)(2) of title 9 U.S.C. provides in relevant part, "In any of the following cases the . . . district court . . . may make an order vacating [an arbitration] award upon application of any party to the arbitration— . . . [w]here there was evident partiality . . . in the arbitrators. . . ."

partiality was present. From that decision, Appellants appeal.

## DISCUSSION

Appellants question (1) the legal standard employed by the district court and (2) the application of that legal standard to facts. This court reviews both issues de novo. *Pullman–Standard v. Swint,* 456 U.S. 273, 289 n. 19, 102 S.Ct. 1781, 1790–91 n. 19, 72 L.Ed.2d 66 (1982); *Anderson v. United States,* 966 F.2d 487, 489 (9th Cir.1992).

### I. The Legal Standard

Appellants argue that *Commonwealth Coatings Corp. v. Continental Cas. Co.,* 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), requires us to reverse the district court. In *Commonwealth Coatings,* one arbitrator on a panel of three failed to disclose that he had engaged in periodic and significant business relations with one of the parties to the arbitration over the previous five or six years. *Id.* at 146, 89 S.Ct. at 338. The arbitrator voted with the panel for an award in favor of the party with whom he had done business. The party that lost the arbitration then challenged the award, asserting that the failure of this arbitrator to disclose his significant business relationship resulted in "evident partiality" under 9 U.S.C. § 10, warranting vacatur of the award.

The district court held that "the arbitrator ... was entirely fair and impartial," *id.* at 151 n. *, 89 S.Ct. at 340 n. *, and refused to vacate the award. Without disturbing the finding that the arbitrator was not biased, *id.* at 147–50 & 151 n. *, 89 S.Ct. at 338–40 & 340 n. *, the Supreme Court reversed and vacated the award. The Court held that an arbitrator's nondisclosure of facts showing a potential conflict of interest creates evident partiality warranting vacatur even when no actual bias is present. The Court tried to articulate a standard indicating what facts show evident partiality when not disclosed by an arbitrator. The Court described facts that must be disclosed as those that "might create an impression of possible bias," *id.* at 149, 89 S.Ct. at 339, those that show the "appearance of bias," *id.* at 150, 89 S.Ct. at 340, and those that indicate that arbitrators

"might reasonably be thought biased against one litigant and favorable to another," *id.* In support of its analysis, the Court cited *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), in which a mayor acting as a judge was held to be evidently biased. 393 U.S. at 148, 89 S.Ct. at 339.

The parties in the instant case dispute what legal standard *Commonwealth Coatings* establishes. Their disagreement is in part fueled by misunderstanding of Justice White's concurrence in *Commonwealth Coatings.* Justice White wrote a concurring opinion in *Commonwealth Coatings,* which Justice Marshall joined. Because three other justices dissented, the vote of either Justice White or Justice Marshall was necessary to the formation of a majority voting for reversal. Justice White's concurrence has therefore been given particular weight. *See Middlesex Mut. Ins. Co. v. Levine,* 675 F.2d 1197, 1200 (11th Cir.1982). *Commonwealth Coatings* is not a plurality opinion, however. Justice White said he joined in the "majority opinion" but wrote to make "additional remarks." 393 U.S. at 150 & 151 n. *, 89 S.Ct. at 340 n. *. Among these additional remarks, Justice White said that arbitrators are not held to the partiality standard applicable to judges and that "trivial" or "remote" relationships need not be disclosed. 393 U.S. at 150–51, 89 S.Ct. at 340 (White, J., concurring).

The parties also dispute the meaning of our case law discussing *Commonwealth Coatings.* We have discussed *Commonwealth Coatings* twice while formulating a substantive standard to apply in adjudicating whether an arbitrator is biased, first in *Sheet Metal Wkrs. Int'l Ass'n, Local 420 v. Kinney Air Cond. Co.,* 756 F.2d 742, 746 (9th Cir.1985), and later in *Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095,* 834 F.2d 751, 755–56 (9th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620, *amended,* 856 F.2d 1572 (9th Cir.1988). Both *Kinney Air* and *Toyota of Berkeley* involved allegations of actual bias rather than evident partiality created by a failure to disclose facts.

Appellants urge us to employ in this case the "appearance of bias" language from the *Commonwealth Coatings* majority opinion. Appellants note that the *Kinney Air* court, when stating that *Commonwealth Coatings* was a nondisclosure case, cited only to the *Commonwealth Coatings* majority opinion. *See* 756 F.2d at 746 (citing only to 393 U.S. at 147–50, 89 S.Ct. at 338–40). According to Appellants, this citation shows that the Ninth Circuit thinks the language in the majority opinion resolved the nondisclosure issue in *Commonwealth Coatings*. Because that language included the phrase "appearance of bias," Appellants argue that in *Kinney Air* we adopted by reference the "appearance of bias" standard.

In rebutting Appellants' arguments, Appellees also cite to *Kinney Air* as well as *Toyota of Berkeley*. Although these two cases involved allegations of actual bias rather than a failure to disclose a conflict, in these cases the court implied that *Commonwealth Coatings* established a "reasonable impression of partiality" standard. In *Toyota of Berkeley* and *Kinney Air* we employed this standard in analyzing whether actual bias was shown. *Toyota of Berkeley*, 834 F.2d at 756; *Kinney Air*, 756 F.2d at 745–46; *see also Employers Ins. of Wausau v. National Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1488–90 (9th Cir.1991) (also employing the "reasonable impression of partiality" standard in an actual bias case); *Sheet Metal Wkrs., Local 162 v. Jason Mfg., Inc.*, 900 F.2d 1392, 1398 (9th Cir.1990) (same). Despite that *Toyota of Berkeley* and *Kinney Air* were actual bias cases, Appellees claim that our analysis in those cases with regard to *Commonwealth Coatings* forecloses use of another standard here.

Appellees also claim that Justice White's concurring opinion rejects the "appearance of bias" language. Appellees imply that the "appearance of bias" language is derived from *Tumey v. Ohio*, in which the partiality of a judge was at issue. Moreover, the "appearance of bias" language appears roughly equivalent to the standard set forth in 28 U.S.C. § 455, which requires a federal judge to recuse himself when his "impartiality might reasonably be questioned." Thus, Ap-

pellees assert, Justice White's statement that arbitrators are not to be held to the standard applicable to judges implicitly rejected the "appearance of bias" language. 393 U.S. at 150, 89 S.Ct. at 340. Appellees claim that Justice White's implied rejection of the "appearance of bias" language means that that language was never adopted by a majority of the court. *See Morelite Constr. Corp. v. New York City Dist. Council Carpenters Benef. Funds*, 748 F.2d 79, 82–83 (2d Cir.1984) (reasoning that Justice White's concurrence implicitly rejected the "appearance of bias" language); *Levine*, 675 F.2d at 1200–01.

■ Neither party is entirely correct. How to apply *Commonwealth Coatings* in a nondisclosure case is an issue of first impression in the Ninth Circuit. Other courts facing the same issue have held that "evident partiality" is present when undisclosed facts show "a reasonable impression of partiality." *Levine*, 675 F.2d at 1201; *see Sanko S.S. Co. v. Cook Indus., Inc.*, 495 F.2d 1260, 1263–64 (2d Cir.1973). Our examination of *Commonwealth Coatings* persuades us, as it did in *Toyota of Berkeley* and *Kinney Air*, that this formulation is the most succinct expression of the *Commonwealth Coatings* standard. *Cf. Toyota of Berkeley*, 834 F.2d at 755–56; *Kinney Air*, 756 F.2d at 746. Consistent with *Commonwealth Coatings*, courts examining nondisclosure cases have not required proof of actual bias in showing "evident partiality." *See Levine*, 675 F.2d at 1200–02; *Sanko S.S. Co.*, 495 F.2d at 1263–64.

We do not rest our decision on any conflict Justice White's concurrence may have with the *Commonwealth Coatings* majority opinion, however. Despite Justice White's rejection in this context of the partiality standard applicable to judges, he does not expressly reject the "appearance of bias" language. Though the concurrence may show an apparent contradiction, the conflict dissipates when one recalls that the context in which arbitrators and judges operate and the functions they perform differ. Expert arbitrators will nearly always, of necessity, have numerous contacts within their field of expertise. 393 U.S. at 150, 89 S.Ct. at 340 (White, J., concurring). Thus, arbitrators have many more potential conflicts of interest than judges. In

arbitration, moreover, only disclosure and not recusal is required. Given these differences, it is clear that the actual standard for arbitrators does differ from that for judges, even though language used to describe both standards may be similar. Justice White's rejection, in this context, of the standard applicable to judges does not therefore require rejection of language such as "appearance of bias," which might be used in other contexts to describe that standard. Given Justice White's express adherence to the majority opinion in *Commonwealth Coatings*, it is clear that the majority opinion, including its "appearance of bias" language, received at least five votes. Even so, the majority did not articulate a succinct standard. "Reasonable impression of partiality," a formulation adopted by other courts and preferred in *Toyota of Berkeley* and *Kinney Air*, is the best expression of the *Commonwealth Coatings* court's holding.

Though *Toyota of Berkeley* and *Kinney Air* provide some support for the proposition that *Commonwealth Coatings* establishes "reasonable impression of partiality" as a legal standard, both the facts and factual analyses of those cases are inapposite to the instant nondisclosure case. Both involve allegations of actual bias rather than evident partiality from failure to disclose. *Toyota of Berkeley*, 834 F.2d at 756–57; *Kinney Air*, 756 F.2d at 746. Moreover, both opinions distinguish their facts from those of nondisclosure cases, including *Commonwealth Coatings*. *Toyota of Berkeley*, 834 F.2d at 756; *Kinney Air*, 756 F.2d at 746.

Notwithstanding the factual dissimilarity of *Toyota of Berkeley* and *Kinney Air* with nondisclosure cases, both *Toyota of Berkeley* and *Kinney Air* employ the "reasonable impression of partiality" standard taken from *Commonwealth Coatings*, a nondisclosure case. *Toyota of Berkeley*, 834 F.2d at 756–57; *Kinney Air*, 756 F.2d at 746; *see also Employers Ins.*, 933 F.2d at 1481; *Jason Mfg.*, 900 F.2d at 1392. That these actual bias cases apply the *Commonwealth Coatings* standard to allegations of actual bias is confusing. In an actual bias case, a court must find actual bias. Finding a "reasonable impression" of partiality is not equivalent to, nor does it imply, a finding of actual bias. Otherwise, the *Commonwealth Coatings* court could not have held that a reasonable impression of partiality was present when no actual bias was shown.

The policies of 9 U.S.C. § 10 also support the notion that the standard for nondisclosure cases should differ from that used in actual bias cases. In a nondisclosure case, the integrity of the process by which arbitrators are chosen is at issue. Showing a "reasonable impression of partiality" is sufficient in a nondisclosure case because the policy of section 10(a)(2) instructs that the parties should choose their arbitrators intelligently. *Commonwealth Coatings*, 393 U.S. at 151, 89 S.Ct. at 340 (White, J., concurring). The parties can choose their arbitrators intelligently only when facts showing potential partiality are disclosed. Whether the arbitrators' decision itself is faulty is not necessarily relevant. But in an actual bias determination, the integrity of the arbitrators' decision is directly at issue. That a reasonable impression of partiality is present does not mean the arbitration award was the product of impropriety.

Perhaps the notion that a reasonable impression of bias does not add up to actual bias prompted the *Kinney Air* court to state: "The appearance of impropriety, standing alone, is insufficient." 756 F.2d at 746; *see also Employers Ins.*, 933 F.2d at 1489; *Toyota of Berkeley*, 834 F.2d at 755. Yet this proposition in conjunction with *Kinney Air*'s (and later cases') use of the *Commonwealth Coatings* standard means that an impression of bias is sufficient while an appearance is not. Certainly the *Commonwealth Coatings* majority did not initiate the use of such a hairline distinction, if such a distinction is even possible. The *Commonwealth Coatings* court reversed precisely because the arbitrator's business relationship with one of the parties reasonably created an "appearance of bias." 393 U.S. at 150, 89 S.Ct. at 350. At the least, *Kinney Air*'s use of "appearance" and "impression" compels the conclusion that "reasonable impression" means something different in an actual bias case than it means in nondisclosure cases under *Commonwealth Coatings*.

Given these differences, we think it entirely appropriate that the *Toyota of Berkeley* and *Kinney Air* courts distinguished nondisclosure cases as inapposite, even though *Toyota of Berkeley* and *Kinney Air* use a standard derived from *Commonwealth Coatings*. *Toyota of Berkeley*, 834 F.2d at 756; *Kinney Air*, 756 F.2d at 746. For these reasons, we refer to other case law to determine whether the instant case presents facts showing a "reasonable impression of partiality."

## II. Conrad's Firm's Representation of Prudential

Appellants claim that Conrad should have disclosed his law firm's former legal representation of Prudential Insurance Co., the owner of Appellee Pru–Bache. Appellants argue also that if Conrad did not know that Prudential Insurance Co. was a client of his firm, he should have investigated.

The district court rejected both contentions, holding that Conrad was not aware of the conflict and had no duty to investigate. Some courts have considered an arbitrator's lack of knowledge as a factor in determining whether evident partiality was present. *See, e.g., Levine*, 675 F.2d at 1201–02; *Overseas Private Inv. Corp. v. Anaconda Co.*, 418 F.Supp. 107, 109–12 (D.D.C.1976). The district court in this case made this factor decisive. The district court's conclusion appears to be premised on the idea that no person could reasonably conclude that an arbitrator could act partially based on facts of which he was unaware. *Anaconda*, 418 F.Supp. at 112. This premise is Appellees' only argument on appeal regarding the evident partiality of Conrad.

Appellants have a better argument. Though lack of knowledge may prohibit actual bias, it does not always prohibit a reasonable impression of partiality. As Appellants argue, an arbitrator may have a duty to investigate independent of its *Commonwealth Coatings* duty to disclose. A violation of this independent duty to investigate may result in a failure to disclose that creates a reasonable impression of partiality under *Commonwealth Coatings*. For instance, the parties can expect a lawyer/arbitrator to investigate and disclose conflicts he has with actual parties to the arbitration. *Close v. Motorists Mut. Ins. Co.*, 21 Ohio App.3d 228, 486 N.E.2d 1275 (1985) (holding that the failure to do so created a reasonable impression of partiality under *Commonwealth Coatings*). The NASD Code required Conrad, a lawyer, to make such an investigation regarding the actual parties to this arbitration. In the typical lawyer/arbitrator's case, lack of knowledge of a conflict may preclude a finding of actual bias. However, a reasonable impression of partiality can form when an actual conflict of interest exists and the lawyer has constructive knowledge of it. 486 N.E.2d at 1278–79. That the lawyer forgot to run a conflict check or had forgotten that he had previously represented the party is not an excuse. *See In re Siegal*, 153 N.Y.S.2d 673 (Sup.Ct.1956). Also, an arbitrator may not know facts of which he may have been suspicious or of which he was on notice which, if true, would create a reasonable impression of partiality if not investigated and disclosed.

Requiring arbitrators to make investigations in certain circumstances gives arbitrators an incentive to be forthright with the parties, honestly disclosing what arbitrators might otherwise have an incentive to hide. *Commonwealth Coatings* establishes that the parties rather than the arbitrators or the courts should be the judges of the partiality of arbitrators:

In many cases the arbitrator might believe the business relationship to be so insubstantial that to make a point of revealing it would suggest he is indeed easily swayed, and perhaps a partisan of that party. But if the law requires the disclosure, no such imputation can arise. And it is far better that the relationship be disclosed at the outset, when the parties are free to reject the arbitrator or accept him with knowledge of the relationship and continuing faith in his objectivity, than to have the relationship come to light after the arbitration, when a suspicious or disgruntled party can seize on it as a pretext for invalidating the award. The judiciary should minimize its role in arbitration as judge of the arbitrator's impartiality. That role is best consigned to the parties, who are the ar-

chitects of their own arbitration process, and are far better informed of the prevailing ethical standards and reputations within their business.

393 U.S. at 151, 89 S.Ct. at 340 (White, J., concurring) (footnote omitted). If the parties are to be judges of the arbitrators' partiality, duties to investigate and disclose conflicts must be enforced, even if later a court finds that no actual bias was present. *See Close,* 486 N.E.2d at 1278–79. We therefore decline to adopt a per se rule that no reasonable impression of partiality can be found absent a showing that the arbitrator knew the facts on which it is based.

In this case, Conrad had a duty to investigate the conflict at issue. Section 23(a) & (b) of the NASD Code requires arbitrators to "make a reasonable effort to inform themselves of any" "existing or past financial, business, [or] professional ... relationships [that they or their employer, partners, or business associates may have] that are likely to affect impartiality or might reasonably create an appearance of partiality or bias." Several courts have held, as we now hold, that representation of a parent corporation is likely to affect impartiality or may create an appearance of partiality in the lawyer's representation of or dealings with a subsidiary. *E.g., Schlossberg v. State Bar Grievance Bd.,* 388 Mich. 389, 200 N.W.2d 219 (1972) (holding that a lawyer who represents subsidiaries may not sit on a board considering claims against the parent because such was an apparent conflict of interest); *see, e.g., Insurance Co. of North America v. Superior Court,* 108 Cal.App.3d 758, 166 Cal.Rptr. 880 (1980) (holding that a vice president of a parent was not an outsider so as to destroy the attorney-client privilege of the subsidiary by attendance at the subsidiary's directors meeting); *McCourt Co. v. FPC Properties, Inc.,* 386 Mass. 145, 434 N.E.2d 1234 (1982) (implying that for purposes of conflict with third parties, no difference exists between parent and subsidiary); *Johns–Manville Sales Corp. v. State Univ. Constr. Fund,* 79 A.D.2d 782, 434 N.Y.S.2d 830 (1980) (agreeing that a "possible conflict" existed when a

lawyer represented the subsidiary as a plaintiff and the lawyer's partner represented the parent as a defendant in other, unrelated cases); *cf. In re Siegal,* 153 N.Y.S.2d at 673.[3] *But cf. Beck Suppliers, Inc. v. Dean Witter Reynolds, Inc.,* 53 Ohio App.3d 98, 558 N.E.2d 1187, 1192–93 (1988); California State Bar Standing Committee on Professional Responsibility and Conduct, *Formal Opinion Number 1989–113,* 1989 WL 253261, Db METH–EO.

■ Conrad therefore had a duty under the NASD Code to make a reasonable effort to inform himself of his firm's representation of Pru–Bache's parent. Conrad did nothing to fulfill that duty. Thus, though he lacked actual knowledge, he had constructive knowledge of his firm's previous representation of Prudential Insurance Co. Given Conrad's constructive knowledge and the presence of the conflict, Conrad's failure to inform the parties to the arbitration resulted in a reasonable impression of partiality under *Commonwealth Coatings. See Close,* 486 N.E.2d at 1278–79.

■ Conrad's evident partiality warrants vacatur of the arbitration award in this case. A finding of evident partiality in one arbitrator generally requires vacatur of the arbitration award. As stated in *Wheeler v. St. Joseph Hospital,* 63 Cal.App.3d 345, 133 Cal. Rptr. 775 (1976): "The arbitrators are not isolated from each other; they hear and decide the case as a panel after joint discussion, debate and deliberation. Each panel member has an opportunity to persuade the others." 133 Cal.Rptr. at 793. Thus, notwithstanding a majority of an arbitration panel is required to enter any arbitration award, when one arbitrator is evidently partial, the panel's award must generally be suspect. This conclusion holds particularly when the other panel members vote with the evidently partial arbitrator, as will be the case in most awards that are later challenged.

## CONCLUSION

For these reasons, we REVERSE the judgment of the district court and VACATE

---

**3.** Conrad admitted that had he known of his firm's previous representation of Prudential In-  surance Co., he would have disclosed it.

the arbitration award. Given our disposition, we decline to examine whether Conrad or the panel exceeded arbitral powers or whether *Rogers v. Schering Corp.,* 165 F.Supp. 295 (D.N.J.1958), *aff'd,* 271 F.2d 266 (3d Cir. 1959), provides a separate ground for reversal.