Affirmed and Petition for Writ of
Mandamus Denied and Majority and Dissenting Opinions filed January 23, 2003.

 

 

 

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO.
14-01-01005-CV

NO.
14-02-00443-CV

____________

 

HOUSTON VILLAGE BUILDERS, INC.,
Appellant

 

V.

 

WILLIAM CRAIG FALBAUM and JENNIFER P. FALBAUM,
Appellees

 

and

 

IN
RE HOUSTON VILLAGE BUILDERS, INC., Relator

 



On
Appeal from the 151st District Court

Harris County, Texas

Trial
Court Cause No. 99-41945

and

Original Proceeding

Writ of Mandamus



 

M
A J O R I T Y   O P I N I O N








The
trial court vacated an arbitration award based on Aevident
partiality@ by the sole arbitrator. 
See Tex. Civ. Prac. &
Rem. Code Ann. ' 171.088(a)(2)(A) (Vernon Supp. 2002).  The court concluded the arbitrator exhibited
evident partiality by failing to disclose information that he was under a duty
to disclose.  The prevailing party in the
arbitration proceeding brought both an interlocutory appeal and a petition for
writ of mandamus.  We affirm the trial
court=s
order and deny the petition.

                                             Factual
and Procedural Background

In
1996, William and Jennifer Falbaum purchased a new
home from Houston Village Builders, Inc. 
After discovering significant foundation problems, the Falbaums filed suit against Village Builders, alleging
breach of contract, breach of express and implied warranties, and DTPA
violations.  As required by the parties=
purchase agreement, the dispute was submitted to binding arbitration subject to
the Construction Industry Arbitration Rules of the American Arbitration Association
(AAAA@).

The
AAA provided the Falbaums and Village Builders a list
of ten potential arbitrators with a short résumé for each.  After each side was given an opportunity to strike
three of the ten candidates, the AAA selected an attorney, Stephen Paxson, to be the sole arbitrator (the AArbitrator@).  The Arbitrator=s résumé states that the majority of his practice is in the
construction area, Aprimarily representing general contractors, builders,
developers, designers, owners, and sub and specialty contractors.@  His résumé also notes he is a member of the
Greater Houston Builders Association (AGHBA@) and the National Association of Home Builders.  Under the heading APublications
and Speaking Engagements,@ the résumé identifies two 1998 speeches and a 1993 article in
the Texas Bar Journal titled ABuilder Liability: The Implied Warranties of Good Workmanship
and Habitability and the Builder=s Statute of Repose.@








On
January 10, 2001, the Arbitrator sent a letter to the AAA=s
case manager providing certain disclosures. 
Among other things, this letter mentions the Arbitrator=s
membership in the GHBA, which he identifies as a trade association of Aapproximately
1350 corporate, business and professional members involved in the residential
construction industry.@  The Arbitrator further
notes in his letter that both Village Builders and its parent company, Lennar Homes, are also members of the GHBA.  This letter states that because of his GHBA
membership, the Arbitrator has met an individual associated with Lennar Homes.  The
letter then states, ANeither my firm, nor any prior law firm of which I have been a
member, have represented Village Builders or Lennar
Homes.@  It concludes by stating, AI
am unaware of any potential conflicts or other disclosures that would need to
be made to the parties.@  The Arbitrator=s
letter was forwarded by the AAA to both parties.

The
arbitration hearing occurred on April 25, 2001. 
On May 17, the Arbitrator issued an award that the Falbaums
take nothing and that they pay $235.50 in administrative fees and expenses to
Village Builders.  Shortly thereafter,
the Falbaums= counsel learned that, in addition to being a member of the
GHBA, the Arbitrator may have had an attorney-client relationship with the
GHBA.  The Falbaums
filed a motion to vacate the award under the Texas Arbitration Act on grounds
of Aevident
partiality@ by the Arbitrator.  See
Tex. Civ. Prac. & Rem. Code Ann. ' 171.088(a)(2)(A).[1]  Village Builders responded to the motion to
vacate and filed a motion to adopt the arbitration award.  See id. '
171.087.  On August 14, the trial court
held a hearing, at which the Arbitrator and two other witnesses (one by
deposition) testified.  The trial court
granted the Falbaums= motion and vacated the arbitration award.








                                                              Evident
Partiality

In granting the Falbaums=
motion to vacate the award, the trial court concluded that the Arbitrator=s
failure to disclose certain information created evident partiality, requiring
the court to vacate the award.  Under the
Texas Arbitration Act, an arbitration award must be vacated if a party=s
rights were prejudiced by evident partiality by a neutral arbitrator.  See id. ' 171.088(a)(2)(A).  In Burlington Northern Railroad Co. v.
TUCO Inc., 960 S.W.2d 629 (Tex. 1997), the Texas Supreme Court set forth
the following standard for establishing evident partiality of a neutral
arbitrator based on the arbitrator=s failure to disclose:

[W]e hold that a prospective neutral arbitrator selected by the
parties or their representatives exhibits evident partiality if he or she does
not disclose facts which might, to an objective observer, create a reasonable
impression of the arbitrator=s partiality.  We
emphasize that this evident partiality is established from the nondisclosure
itself, regardless of whether the nondisclosed
information necessarily establishes partiality or bias.

Id. at 636 (emphasis in original). 
Significantly, a potential arbitrator=s required disclosures are not limited to direct financial or
business relationships; instead, the court concluded that Aparties
should have access to all information that might reasonably affect the
potential arbitrator=s impartiality.@  Id. at 637.  In this case, the trial court concluded that
the Arbitrator should have disclosed (1) his attorney-client relationship with
the GHBA, (2) his involvement in preparing amicus briefs relating to changes in
the law affecting claims pleaded by the Falbaums, and
(3) his testimony before the Texas Legislature relating to certain legal
theories on which the Falbaums relied.

                                                  Applying
the TUCO Standard








We
begin by addressing the claim that the TUCO standard, whereby
nondisclosures alone can establish evident partiality, does not apply in this
case because the Arbitrator was selected by the AAA, not the parties.  In TUCO, the court expressly noted
that it was adopting a standard only for situations where Athe
parties select their arbitrators.@  Id.  Later in its opinion, the court distinguishes
a case out of the Tenth Circuit Court of Appeals because the neutral arbitrator
in that case was selected by the AAA, and thus it did not present a case Awhere
parties are selecting their arbitrators.@  Id. at 638
(discussing Ormsbee Dev. Co. v. Grace,
668 F.2d 1140 (10th Cir. 1982)).  In Ormsbee, however, the parties=
agreement simply called for the AAA to select the neutral arbitrator, and there
is no indication the parties had any veto power over that selection.  In this case, the parties were permitted to
strike up to three arbitrators from a list of ten before the selection was
made.  This case therefore presents a
situation where, as in TUCO, parties need access to all relevant
information to aid their participation in the selection process.  See TUCO, 960 S.W.2d at
636.  Accordingly, we conclude this case
falls within the category of cases in which the parties select their
arbitrator, and thus the TUCO standard applies.

Even
if we were to find that the parties did not strictly Aselect@
their arbitrator in accordance with the facts in TUCO, we believe the
Arbitrator would be under the same duty to disclose.  In Mariner Financial Group, Inc. v. Bossley, 79 S.W.3d 30 (Tex. 2002), all three arbitrators
were selected by an administrator from the National Association of Securities
Dealers.  In reviewing the evidence as to
whether one of the arbitrators was evidently partial, the Texas Supreme Court
cited TUCO and noted that the arbitrator had a duty to disclose
nontrivial relationships known to him that might objectively create a
reasonable impression of his partiality. 
See Mariner Financial, 79 S.W.3d at 32B33.  Thus, Mariner Financial apparently
extends the TUCO standard to all neutral arbitrators, regardless
of the method for their selection.  See
id.; see also id. at 35 (AIt is well-established . . . that a neutral arbitrator has a
duty to disclose dealings of which he or she is aware that might create an
impression of possible bias.@) (internal quotations omitted).

Because
the Arbitrator was selected to serve as a neutral arbitrator, we conclude he
was under a duty to disclose facts within his knowledge that might, to an
objective observer, create a reasonable impression of his partiality.  If the evidence showed he failed to disclose
such facts, the nondisclosure establishes evident partiality.  See TUCO, 960 S.W.2d at 636.








                                    The
Arbitrator=s Relationship with the GHBA

In its motion to vacate, the Falbaums
argued the Arbitrator failed to disclose that, at the time of the arbitration,
he served as counsel to the GHBA, a trade association of homebuilders.  Both Village Builders and its parent company,
Lennar Homes, are members of the GHBA.  In its findings of fact, the trial court
found that the Arbitrator Ahas had a long-term attorney-client relationship with the GHBA.@  Village Builders does not challenge this
finding.  Instead, it contends the
Arbitrator was under no duty to disclose this representation, and even if he
was, he satisfied this duty. 
Alternatively, Village Builders claims the Falbaums
may not complain about the Arbitrator=s alleged nondisclosure because the Falbaums
could have discovered this information, yet they made no attempt to investigate
the facts.

                                                   The
Arbitrator=s Duty to Disclose

Village
Builders first argues the Arbitrator was not required to disclose his
representation of the GHBA because he was under no duty to identify specific
individuals or entities he has represented for whom he might have advocated
positions contrary to the arguments raised by the parties in this case.  However, the Arbitrator=s
undisclosed relationship with the GHBA raises concerns for reasons other than
legal positions he may have advanced on the trade association=s
behalf.  The evidence showed that, at the
time of the arbitration, the Arbitrator was in a current and long-standing
attorney-client relationship with a trade association of which both Village
Builders and Lennar Homes were members.  Kathryn Wood, the GHBA=s
in-house counsel, testified by deposition that the Arbitrator has Aan
ongoing relationship@ with the GHBA as Aone of [its] legal counsel.@  According to Wood, she
would contact the Arbitrator directly for advice or assistance on certain
matters, including issues involving the Residential Construction Liability Act
and implied warranties, issues that were undeniably raised in the arbitration
proceeding.








Although
the Arbitrator did not have a direct attorney-client relationship with Village
Builders or Lennar Homes, his relationship with the
GHBA can be compared to that of an arbitrator who represents the parent company
of one of the parties to an arbitration. 
In Schmitz v. Zilveti, 20 F.3d 1043
(9th Cir. 1994), a case cited with approval by our supreme court in TUCO,
the arbitrator=s law firm had previously represented a parent company of one
of the parties to the arbitration.  Schmitz,
20 F.3d at 1044.  Despite the absence of
any suggestion that the parent company controlled the actions of the
subsidiary, the Ninth Circuit Court of Appeals concluded that the arbitrator=s
firm=s
prior representation of the parent company Ais likely to affect impartiality or may create an appearance of
partiality.@  Id. at
1049.  In this case, the Arbitrator=s
connection to the GHBA is stronger than the connection between the arbitrator
and the parent company in Schmitz; here, the Arbitrator=s
representation was personal and ongoing at the time of the arbitration.  Furthermore, it is not unreasonable to
suggest that someone in the Arbitrator=s position might be influenced into ruling in favor of a
trade-association member to protect his status as the association=s
counsel.  Although the record is silent
as to whether Village Builders or Lennar Homes
actually had the authority or ability to influence the GHBA=s
decisions regarding selection of outside counsel, the test we must apply
requires only that an objective observer would believe the undisclosed
relationship might create an impression of partiality or bias.[2]  See TUCO, 960 S.W.2d at 636.








Village
Builders nevertheless argues that the Arbitrator=s relationship with the GHBA cannot support vacation of the
arbitration award, citing United States Wrestling Federation v. Wrestling
Division of AAU, Inc., 605 F.2d 313 (7th Cir. 1979).  In that case, the arbitrator failed to
disclose that he and his law firm had significant connections to Northwestern
University.  Northwestern was a member of
the NCAA, which was affiliated with the USWF, the prevailing party in the
arbitration.  The Seventh Circuit Court
of Appeals held that the arbitrator=s relationship with the USWF was too remote to require the
arbitration decision to be set aside.  Id.
at 320.  Unlike this case, neither the
association (the NCAA) nor the individual member (Northwestern) represented by
the arbitrator=s firm was a party to the arbitration.  Furthermore, we believe that an arbitrator=s
representation of a trade association creates a much stronger potential for
partiality in an arbitration involving one of the association=s
members than if the arbitrator represented a single member of an association
and the association was a party in the arbitration.  We conclude that United States Wrestling
Federation is distinguishable from this case.

Under
these facts, we conclude that, to an objective observer, the Arbitrator=s
ongoing service as counsel for the GHBA might create a reasonable impression of
partiality toward Village Builders and Lennar Homes,
two sizeable members of that trade association. 
Accordingly, the Arbitrator was required to disclose the existence of
his ongoing attorney-client relationship with the GHBA.

                                                 The
Arbitrator=s Alleged Disclosures

Next,
Village Builders argues that, even if the Arbitrator had a duty to disclose his
attorney-client relationship with the GHBA, he satisfied this duty through (1)
the listing on his AAA résumé of a 1993 Texas Bar Journal article
identifying him as counsel to the GHBA=s board of directors and (2) his alleged statement at the
beginning of the arbitration hearing that he Aworked with@ the GHBA.








The
Arbitrator=s AAA résumé, submitted to the parties along with the list of
potential arbitrators, includes a reference to a 1993 article published in the Texas
Bar Journal.  At the end of the
article, there is a short biography stating that the Arbitrator Aserves
as counsel to the board of directors of the Greater Houston Builders
Association.@  Village Builders claims
that by citing this article in his résumé, the Arbitrator sufficiently
disclosed his ongoing attorney-client relationship with the GHBA.  We disagree. 
Despite specifically mentioning his membership in the GHBA both on his
résumé and in his disclosure letter, the Arbitrator never informed the parties
that he served as the association=s attorney.  Instead,
Village Builders relies on a form résumé listing an eight-year-old article that
contained the relevant information in a single endnote.  This does not satisfy an arbitrator=s
affirmative duty to disclose.  Even if we
were to find that it did, this article discloses only that the Arbitrator
served as counsel to the GHBA=s board in some unspecified capacity in 1993.  This purported disclosure is not sufficient
to inform the parties that the Arbitrator was in an attorney-client
relationship with the GHBA at the time of the arbitration.

Village
Builders also contends the Arbitrator disclosed the existence of his
attorney-client relationship with the GHBA orally at the arbitration
hearing.  The Arbitrator testified that,
at the beginning of the hearing, he told the parties that he Aworked
with@
the GHBA.  Even if we assume the trial
court believed this testimony, we conclude the Arbitrator=s
statement would not satisfy his duty to disclose.  At best, the Arbitrator=s
statement is ambiguous as to whether he was ever the GHBA=s
attorney.  As a member of the GHBA, he
could have Aworked with@ the association in some capacity other than as its
attorney.  The Arbitrator=s
statement certainly did not inform the parties of his current and ongoing
attorney-client relationship with the GHBA. 
We conclude the Arbitrator failed to disclose his attorney-client relationship
with the GHBA.

                                                                              

 








                                                 The
Falbaums= Failure to Investigate

Finally,
Village Builders argue that the Falbaums=
complaint should fail because they could have discovered the Arbitrator=s
attorney-client relationship with the GHBA on their own but failed to
investigate.  However, as the supreme
court makes clear in Mariner Financial, determining whether an
arbitrator satisfied the disclosure duty does not turn on what facts are
available to the complaining party:

[T]he concurrence would excuse even an arbitrator=s
knowing concealment of a relationship evidencing partiality as long as there
are facts from which the arbitrator can presume the complaining party knew it
too.  But the whole purpose of an
arbitrator=s duty to disclose is to avoid this very type of speculative
presumption and let the parties to the arbitration make the call.

Mariner
Financial, 79 S.W.3d at 35; see
also id. at 36 (Owen, J., concurring) (AWhat
the losing party to an arbitration knew or should have known does not answer
the question of whether an arbitrator=s nondisclosure exhibits evident partiality.@).  Thus, regardless of whether the Falbaums knew or should have known of the Arbitrator=s
attorney-client relationship with the GHBA, the Arbitrator=s
failure to disclose this relationship is evidence of his partiality.








To
the extent Village Builders contends the Falbaums=
failure to investigate constitutes a waiver of their evident-partiality claim,
we note that in Mariner Financial, the supreme court expressly declined
to consider whether parties to an arbitration have a duty to investigate.  Id. at 33.  Furthermore, waiver is an affirmative
defense, on which Village Builders had the burden of proof.  See Paradigm Ins. Co. v. Texas
Richmond Corp., 942 S.W.2d 645, 652 n.5 (Tex. App.CHouston
[14th Dist.] 1997, writ denied); El Paso Natural Gas Co. v. American
Petrofina Co. of Tex., 733 S.W.2d 541, 553 (Tex. App.CHouston
[1st Dist.] 1986, writ ref=d n.r.e.).  Village Builders failed to establish that a
reasonable investigation would have led the Falbaums
to discover the Arbitrator=s ongoing attorney-client relationship with the GHBA.  As we note above, the information contained
in the 1993 Texas Bar Journal article would not have apprised the Falbaums that the Arbitrator had an ongoing attorney-client
relationship with the GHBA at the time of the arbitration.  Thus, we reject Village Builders=s
complaints about the Falbaums=
alleged failure to investigate.

                                                                    Conclusion

As
a prospective neutral arbitrator, the Arbitrator had a duty to disclose to the
parties that he had an ongoing attorney-client relationship with the GHBA, a
trade association of homebuilders of which Village Builders and Lennar Homes were members. 
The Arbitrator=s failure to disclose this information exhibited evident partiality,
which required the trial court to vacate the arbitration award.[3]  We affirm the trial court=s
judgment and deny the petition for writ of mandamus.

 

 

 

 

 

/s/        Leslie
Brock Yates

Justice

 

 

Judgment rendered and Majority and
Dissenting Opinions filed January 23, 2003.

Panel consists of Justices Yates, Fowler,
and Frost (Frost, J., dissenting).











[1]  The relevant
portion of section 171.088 states:

 

(a)  On
application of a party, the court shall vacate an award if:

. . .

(2)  the rights
of a party were prejudiced by:

(A)  evident
partiality by an arbitrator appointed as a neutral arbitrator
. . . .

 

Tex. Civ. Prac. & Rem.
Code Ann. '
171.088(a).





[2]  The proper
test is not whether the undisclosed information would, in fact, create the
appearance of bias.  Rather, the court
must determine whether an objective observer would believe the information might
create that appearance.  While we
acknowledge that this case presents a close call, the supreme court has made it
clear that potential arbitrators should err in favor of full disclosure.  See TUCO, 960 S.W.2d at 637.

 

The dissent argues that it would be too
speculative for an objective observer to conclude that the Arbitrator might
think the GHBA had any interest in the outcome of the arbitration.  However, the record shows that, within the
last three years, the Arbitrator worked on at least two amicus briefs that were
filed with the Texas Supreme Court on behalf of the GHBA.  In both cases, the GHBA sided with a homebuilder
and sought to reverse a judgment entered in favor of a purchaser.  Furthermore, these cases obviously related to
issues raised in this arbitration, as the Arbitrator cited and distinguished
both of the appellate-court opinions in his written award.





[3]  Because the
Arbitrator=s failure to disclose his attorney-client relationship
with the GHBA was itself sufficient to support the trial court=s judgment vacating the arbitration award, we need not
address the other nondisclosures found by the trial court.