386 F.3d 1306
 FIDELITY FEDERAL BANK, FSB, a federally chartered savings bank, Petitioner-Appellant,
v.
DURGA MA CORPORATION, a New Jersey corporation, Respondent-Appellee.
Fidelity Federal Bank, FSB, a federally chartered savings bank, Petitioner-Appellant,
v.
Durga Ma Corporation, a New Jersey corporation, Respondent-Appellee.
 No. 02-56381.
 No. 02-56548.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 29, 2004.
 Filed October 29, 2004.
 
 COPYRIGHT MATERIAL OMITTED Timothy M. Maggio, Shane Blackstone, Lord, Bissell & Brook, LLP, Chicago, IL, for the appellant.
 Philip Brown, Egerman & Brown LLP, Beverly Hills, CA, for the appellee.
 Appeal from the United States District Court for the Central District of California; John F. Walter, District Judge, Presiding. D.C. No. CV-02-01990-JFW.
 Before: PREGERSON, BEEZER, and TALLMAN, Circuit Judges.
 BEEZER, Circuit Judge.
 
 
 1
 In No. 02-56548, Fidelity Federal Bank, FSB ("Fidelity") appeals the district court's order granting Durga Ma Corporation's ("Durga Ma") motion under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10. The order confirms an arbitration award against Fidelity in favor of Durga Ma arising out of a breach of contract claim. In No. 02-56381, Fidelity appeals the district court's order denying Fidelity's motion to vacate the award. Fidelity contends that the award should be vacated under 9 U.S.C. § 10 due to the evident partiality of an arbitrator appointed by Durga Ma. The arbitrator agreed to "act neutrally" but failed to disclose certain family and business relationships with Durga Ma's attorneys. Nos. 02-56548 and 02-56381 are consolidated for this appeal.
 
 
 2
 * We have jurisdiction pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16(a) and we affirm. We hold that Fidelity waived its right to seek vacatur of the arbitration award based on the evident partiality of the arbitrator initially appointed by Durga Ma. Fidelity had constructive notice of the arbitrator's potential connections to the Durga Ma attorneys but did not object to the arbitrator's appointment or his failure to make disclosures until after an interim award was entered in favor of Durga Ma.
 
 II
 
 3
 Fidelity and Durga Ma, a jewelry retailer, were parties to a Private Label Credit Card Marketing and Origination Agreement ("Agreement") under which Fidelity agreed to issue private label credit cards to customers of Durga Ma and affiliated jewelry retailers. Shortly after the inception of the Agreement, Durga Ma claimed that Fidelity breached the Agreement, and demanded arbitration of the disputed claim. The parties' Agreement provided for arbitration in the following terms:
 
 
 4
 If any disputes or controversies arise between the Parties in connection with this Agreement or their acts or duties hereunder, such disputes or controversies shall be submitted to and resolved by binding arbitration in accordance with the laws of the State of California and the rules of the American Arbitration Association. Each Party shall select one arbitrator, and the arbitrators so selected shall select a third arbitrator, which three arbitrators shall constitute the arbitration panel for the dispute. All arbitration proceedings shall be conducted in Los Angeles, California. The decision or award of the arbitration panel shall be final and binding and judgment thereon may be entered in a state or federal court with jurisdiction over the Parties. It is understood that the arbitration panel shall have no authority to add to, subtract from, or modify any provision of this Agreement.
 
 
 5
 Durga Ma appointed Alton Leib as its arbitrator and notified the American Arbitration Association ("AAA") of its selection by letter on November 19, 1999. In May 2000, Fidelity selected the Hon. Judith M. Ryan, a retired California Superior Court judge, as its arbitrator. In September 2000 Viggo Boserup was engaged as the neutral arbitrator and administrator of the arbitration panel.[1]
 
 
 6
 The arbitrators and the parties' counsel convened for the first time in an October 2, 2000 phone conference to address preliminary matters. During the conference, both party-appointed arbitrators agreed, with the consent of the parties, to "act neutrally" when considering the evidence and rendering an award.[2]
 
 
 7
 Neither Fidelity nor Durga Ma requested a disclosure statement from any arbitrator at any time before or during the arbitration proceedings. Neither of the arbitrators who were initially appointed by the parties provided a disclosure statement. Neither Fidelity nor Durga Ma objected to the arbitrators' failure to provide disclosure statements.
 
 
 8
 The arbitration was conducted before the three-member panel in July and September 2001 and included seven days of testimony. On September 27, 2001, the arbitrators issued a unanimous interim arbitration award in favor of Durga Ma. The panel awarded Durga Ma $2.3 million in damages and left open the question of attorneys' fees and costs.
 
 
 9
 On September 28, 2001, Durga Ma's counsel filed papers in support of its request for attorneys' fees and costs. Durga Ma submitted time records for its attorneys, Egerman & Brown. The Egerman & Brown time records revealed communications between Arbitrator Leib and Durga Ma's counsel both before and after the October 2, 2000 phone conference at which the arbitrators agreed to "act neutrally."[3] Fidelity accused Durga Ma of carrying out ex parte communications with Arbitrator Leib.
 
 
 10
 Egerman & Brown represented Durga Ma at all relevant times in the arbitration and court proceedings. Philip Brown, named partner of Egerman & Brown, served as lead counsel. Lee Egerman, an associate at Egerman & Brown and the son of named partner Mark Egerman, served as co-counsel and appeared at nearly every arbitration hearing.
 
 
 11
 On October 26, 2001, Fidelity objected to any further proceedings before the arbitration panel and, three days later, requested limited discovery of the communications and relationship between Arbitrator Leib and the Durga Ma attorneys. Fidelity was permitted to take the deposition of Philip Brown and obtain sworn declarations from Mark Egerman and Arbitrator Leib.
 
 
 12
 Arbitrator Leib disclosed that he had been married to Mark Egerman's sister, Maxine Egerman, for 17 years.[4] Leib and Maxine Egerman were separated and divorced about 25 years before Leib became involved in this matter as an arbitrator. Thus, Arbitrator Leib and Mark Egerman are former brothers-in-law. Arbitrator Leib is also the former uncle of Lee Egerman, who served as co-counsel throughout the arbitration proceedings. Arbitrator Leib and Maxine Egerman were separated when Lee Egerman was five years old. Arbitrator Leib's two sons are Lee Egerman's cousins. According to Leib's declaration, his divorce was bitter and he had very little contact with the Egerman family thereafter.
 
 
 13
 Philip Brown, a partner at Brown and Egerman and lead counsel for Durga Ma on the Fidelity matter, worked with Arbitrator Leib on a federal securities fraud case in the 1970s.[5] After their work was concluded, Brown and Leib maintained limited contact. According to Brown and Leib, they met for lunch on a few occasions between 1998 and 2000.[6]
 
 
 14
 Brown and Mark Egerman, in addition to being law partners, are married to sisters, Terry Fenberg Brown and Lynn Fenberg Egerman. During the time that Maxine Egerman was married to Leib, Mark Egerman and his wife, Lynn, invested in a piece of real property with Leib and Maxine. The property was sold before Leib and Maxine Egerman were divorced.
 
 
 15
 Upon discovering these facts, Fidelity moved the panel to vacate the arbitration award, arguing that Arbitrator Leib was evidently partial to Durga Ma based on his failure to disclose these personal and business relationships between Leib and the Durga Ma attorneys. Fidelity did not claim that Leib was actually biased.
 
 
 16
 On February 22, 2002, the arbitrators determined that they lacked jurisdiction to review Fidelity's motion to vacate the arbitration award and denied the motion.
 
 
 17
 Also on February 22, 2002, the panel issued a unanimous final arbitration award in favor of Durga Ma. The award granted Durga Ma over $2.3 million in damages, attorneys' fees of about $836,000, and costs of about $164,000.
 
 
 18
 Fidelity moved the district court to vacate the arbitration award, and Durga Ma moved the district court to confirm the arbitration award under the FAA.
 
 
 19
 The district court denied Fidelity's motion to vacate the arbitration award in a one-sentence order without making findings of fact or conclusions of law.[7] About a month later, the District Court granted Durga Ma Corporation's motion to confirm the arbitration award under the FAA in a similarly brief minute order.[8]
 
 
 20
 Fidelity timely appealed both orders to this court. Those appeals, Nos. 02-56381 and 02-56548, have been consolidated for purposes of the parties' briefing and our review.
 
 III
 
 21
 On appeal, Fidelity asserts that the arbitration award should be vacated because Arbitrator Leib displayed evident partiality when he failed to disclose personal and professional relationships with the Durga Ma attorneys at the arbitration proceedings when he agreed to act as a neutral arbitrator.
 
 
 22
 Durga Ma asserts that Fidelity waived its right to seek vacatur for evident partiality because it was on notice that Leib may have had personal or professional connections to Durga Ma or its attorneys, but failed to object to Leib's appointment or Leib's failure to submit a disclosure statement until after the interim arbitration award was issued. Durga Ma also argues that Leib was never a neutral arbitrator who met disclosure requirements. Alternatively, Durga Ma asserts that even if Leib was a neutral arbitrator with a duty to disclose his present and past relationships with Durga Ma's attorneys, those relationships were too remote and tenuous to give rise to a charge of evident partiality.
 
 
 23
 We review de novo a district court's decision to confirm or vacate an arbitration award. Woods v. Saturn Distrib. Corp., 78 F.3d 424, 427 (9th Cir.1996). We agree that Fidelity waived its right to seek vacatur of the arbitration award.
 
 
 24
 We need not decide whether Leib became a neutral arbitrator with heightened disclosure requirements when he agreed to act neutrally or whether Leib displayed evident partiality when he failed to disclose his relationships with the Durga Ma attorneys.
 
 IV
 
 25
 Fidelity asserts that the Federal Arbitration Act and federal law govern the issues we address on appeal. Durga Ma claims that California arbitration rules and California law apply. We conclude that federal law governs.
 
 
 26
 Both parties acknowledge that in Sovak v. Chugai, we held that there is a "strong default presumption[] that the [Federal Arbitration Act], not state law, supplies the rules for arbitration." 280 F.3d 1266, 1269 (9th Cir.2002). To overcome that presumption, parties to an arbitration agreement must evidence a "clear intent" to incorporate state law rules for arbitration. Id., quoting Roadway Package Sys. v. Kayser, 257 F.3d 287, 293 (3d Cir.2001). Durga Ma argues that the contract expresses the clear intent of the parties to incorporate California's arbitration rules, satisfying Sovak. The Fidelity-Durga Ma arbitration clause provides:
 
 
 27
 Disputes or controversies shall be submitted to and resolved by binding arbitration in accordance with the laws of the State of California and the rules of the American Arbitration Association.
 
 
 28
 In Sovak, we interpreted a virtually identical choice-of-law clause as electing federal procedural rules for arbitration and state substantive law.[9] Id. at 1270. Consistent with Sovak, we interpret the agreement between Durga Ma and Fidelity to elect state substantive law but federal procedural law. Rules relating to disclosure by an arbitrator and remedies for arbitrator bias or misconduct relate to the process of the arbitration rather than the substance of the dispute. We look to the FAA and federal law to determine whether Arbitrator Leib was evidently partial, whether vacation of the arbitration award was required and whether Fidelity's evident partiality challenge is waived.[10]
 
 V
 
 29
 The Federal Arbitration Act authorizes a district court to vacate an arbitration award "where there was evident partiality or corruption in the arbitrators, or either of them." 9 U.S.C. § 10(a)(2); see also Commonwealth Coatings Corp. v. Cont'l Casualty Co., 393 U.S. 145, 147, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968). Evident partiality is present when facts that are not disclosed by an arbitrator create a "reasonable impression of partiality." Schmitz v. Zilveti, 20 F.3d 1043, 1046 (9th Cir.1994). In nondisclosure cases, a showing of actual bias is not required. Id. at 1048. We do not reach the issue whether Leib's past and present personal and professional relationships with the Durga Ma attorneys create a reasonable impression of partiality because we conclude that Fidelity waived its right to seek vacatur on that basis.
 
 
 30
 The parties selected a process for appointing arbitrators whereby each party selected its own arbitrator and the party-appointed arbitrators selected a third neutral arbitrator. The parties then chose to have the party-appointed arbitrators act neutrally or impartially. That process put Fidelity on notice that Arbitrator Leib, who was initially retained and appointed by Durga Ma as a non-neutral party-appointed arbitrator, was likely to have some personal or professional connection to Durga Ma or its attorneys.
 
 
 31
 When the parties agreed that the party-appointed arbitrators would "act neutrally," there was no exchange of disclosure statements by the arbitrators who were initially appointed by the parties. Fidelity did not request a disclosure statement from Arbitrator Leib; nor did Fidelity object to the failure to exchange disclosures. It was not until after an interim award was issued in Durga Ma's favor that Fidelity requested any disclosure of potential conflicts from Arbitrator Leib. Fidelity did not have actual knowledge of Leib's personal and professional relationships to Durga Ma's attorneys until after the interim award was issued.
 
 
 32
 We address as a matter of first impression whether a party with constructive knowledge of potential partiality of an arbitrator waives its right to challenge an arbitration award based on evident partiality if it fails to object to the arbitrator's appointment or his failure to make disclosures until after an award is issued.
 
 
 33
 Several federal courts hold that a party's failure to object to the real or evident partiality of an arbitrator before an award is issued does not waive the challenge unless the party had real, actual knowledge of the conflict. See, e.g., Apperson v. Fleet Carrier Corp., 879 F.2d 1344, 1359(6th Cir.1989) (holding that the successful party may not rely on the failure to object for bias unless "[a]ll the facts now argued as to [the] alleged bias were known ... at the time the joint committee heard their grievances" (quoting Early v. Eastern Transfer, 699 F.2d 552, 558 (1st Cir.1983))); Middlesex Mut. Ins. Co. v. Levine, 675 F.2d 1197, 1204 (11th Cir.1982); HSMV Corp. v. ADI Ltd., 72 F.Supp.2d 1122, 1128(C.D.Cal.1999).
 
 
 34
 Other courts have invoked the waiver principle under circumstances in which a complaining party either knew or should have known of the facts indicating partiality of an arbitrator but failed to raise an objection prior to the arbitration decision. See, e.g., JCI Communications, Inc. v. Int'l Bhd. of Elec. Workers, Local 103, 324 F.3d 42, 52 (1st Cir.2003) (holding that a party "which was put on notice of the risk when it signed the contract [and] chose not to inquire about the backgrounds of the Committee members either before or during the hearing" waived the right to challenge the decision based on evident partiality); Kiernan v. Piper Jaffray Cos., Inc., 137 F.3d 588, 593 (8th Cir.1998) ("While they did not have full knowledge of all the relationships to which they now object, they did have concerns about [the arbitrator's] partiality and yet chose to have her remain on the panel rather than spend time and money investigating further until losing the arbitration.").
 
 
 35
 Holding that the waiver doctrine applies where a party to an arbitration has constructive knowledge of a potential conflict but fails to timely object is the better approach in light of our policy favoring the finality of arbitration awards. There is no charge or evidence of actual bias and no indication that the arbitration award was anything but fair. A rule that places the burden on parties to obtain disclosure statements from arbitrators who were initially party-appointed but later agree to act neutrally is consistent with our policy favoring the finality of arbitration awards. It is also consistent with our policy favoring arbitration as a speedy and cost-effective means of resolving disputes. See Phoenix Newspapers, Inc. v. Phoenix Mailers Union Local 752, 989 F.2d 1077, 1080(9th Cir.1993).
 
 
 36
 We AFFIRM the district court's orders confirming the arbitration award in No. 02-56548 and DENY Fidelity's motion to vacate the award in No. 02-56381.
 
 
 
 Notes:
 
 
 [1]
 The parties initially chose the AAA to administer the arbitration. Shortly before the selection of the third arbitrator, Durga Ma terminated the AAA's involvement with Fidelity's consent, citing its failure to provide a speedy and efficient forum
 
 
 [2]
 The parties dispute whether the arbitrators' agreement to act "neutrally" rendered all three arbitrators neutral or whether the party-appointed arbitrators retained their status as party-appointed arbitrators, a distinction relevant to AAA disclosure requirements in effect at the time. The district court made no specific findings as to whether the party-appointed arbitrators were converted into neutral arbitrators for disclosure purposes
 
 
 [3]
 Communications prior to the arbitrators' agreements to act neutrally included phone conversations between Arbitrator Leib and Durga Ma attorneys regarding the appointment of Leib as the party arbitrator, the selection of a neutral arbitrator and the status of an extension request by Fidelity. Leib also had lunch with Philip Brown on a few occasions "until or about October 2000." Leib asserts that he and Brown did not discuss the arbitration or the case at these lunches
 On the day of the conference in which the party-appointed arbitrators agreed to act neutrally, a phone conversation took place between Leib and a Durga Ma attorney regarding "arbitration ethics issues."
 After the parties agreed to act neutrally, Leib and the Durga Ma attorneys communicated by fax or e-mail regarding the arrangement for the payment of the arbitrators' fees and communicated by phone regarding the deposit of arbitration fees, a missing page of Durga Ma's brief, and a scheduling issue. Leib also faxed his bills to the Durga Ma attorneys. At one point, Brown handed his brief in the matter to Leib at a restaurant because Leib had already left his office for the day. Leib described this meeting as a ten-second exchange. Leib misplaced the brief and, the next day, stopped by the offices of the Durga Ma attorneys to pick up a copy of the brief. At that time, he exchanged greetings with Mark Egerman. Leib also exchanged greetings with Brown and Mark Egerman on one occasion when he saw them first at a restaurant and on another occasion when he saw Brown on the street.
 
 
 [4]
 Leib and Maxine Egerman were married in 1960. They were separated in 1975 and divorced in 1977
 
 
 [5]
 Zweig v. Hearst Corp., 594 F.2d 1261 (9th Cir.1979).
 
 
 [6]
 Brown stated in a declaration that "During the period from October 1998 and until about October 2000, I had lunch with Phil Brown every few months. The lunches lasted about an hour. We talked about world affairs, cultural events, told war stories about cases we were handling, and asked advice on how to handle legal issues involved in them. We did not discuss this case."
 
 
 [7]
 The court's order states: "After reviewing and considering the material submitted by the parties and hearing oral argument, the Court DENIES Petitioner's Motion To Vacate Arbitration Award."
 
 
 [8]
 The court's order states: "After considering the parties' papers and the arguments therein, the Court grants Durga Ma Corporation's Motion to Confirm Arbitration Award."
 
 
 [9]
 InSovak, the parties also agreed to arbitrate all disagreements "in Chicago pursuant to Illinois law and the rules of the American Arbitration Association." 280 F.3d at 1268.
 
 
 [10]
 Sovak examined whether state or federal law governs waiver of the right to compel arbitration, an issue directly affecting whether a claim may be arbitrated. 280 F.3d at 1270. In addition to the presumption that federal law supplies the rules for arbitration, Sovak held that where conflicting state rules would foreclose a party from electing an arbitration forum, choice-of-law issues must be resolved in light of the FAA's preference for arbitration. Accordingly, the FAA, not state law, supplied the standard for waiver of the right to compel arbitration. Id.
 Durga Ma contends that where, as here, arbitrability is not directly at issue, the preference for federal law does not exist. Durga Ma cites Volt Info. Sci., Inc. v. Board of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), in which the Supreme Court explained that "[t]here is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate. Interpreting a choice-of-law clause to make applicable state rules governing the conduct of arbitration — rules which are manifestly designed to encourage resort to the arbitral process — simply does not offend ... any[] policy ... embodied in the FAA." Volt, 489 U.S. at 476, 109 S.Ct. 1248.
 The Sovak court, however, did not limit its holding that federal law presumptively supplies arbitration rules to cases where arbitrability is directly affected. Even without a presumption that the FAA provides the rules for arbitration, a plain reading of the parties' agreement evinces an intent to arbitrate using federal, not state, procedural rules.